UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

KIMBERLY KAY SHERBERT,

    Plaintiff,

    v().    CAUSE NO.: 1:18-CV-206-HAB

ANDREW SAUL,
Acting Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**

Plaintiff Kimberly K. Sherbert has filed an appeal under 42 U.S.C. § 405(g) for judicial review of the Social Security Commissioner's decision ceasing her entitlement to disability insurance benefits under Section 223(f) of the Social Security Act.

Previously, in October 2012, Plaintiff was found to be under a disability as defined in the Social Security Act since April 12, 2007, due to functional limitations caused by narcolepsy. On December 23, 2015, it was determined that Plaintiff was no longer disabled as of August 4, 2015. This determination was upheld upon reconsideration before a State Agency Disability Hearing Officer. An Administrative Law Judge (ALJ) conducted a hearing on July 5, 2017 and, on February 8, 2018, issued a decision (the Decision) finding that Plaintiff was no longer disabled. (R. 10–20.) On June 5, 2018, the Appeals Council denied review (R. 1–3), thereby rendering the ALJ's Decision the final decision of the Commissioner.

ANALYSIS

A.       Procedural Background and the ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent her from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

The October 2012 decision is the most recent favorable medical decision in which Plaintiff was deemed disabled; it is known as the "comparison point decision" (CPD). At the time of the CPD, Plaintiff was found to have the severe impairment of narcolepsy. The resulting residual functional capacity (RFC) for light work, with some additional postural limitations, also included the following: "due to decreased focus, fatigue, memory deficits, sleepiness, deficits in concentration and tendency to fall asleep at unscheduled times and for variable lengths of time, the claimant was likely to be off task for greater than 10 percent of the workday." (R. 12.)

Once a claimant is determined to be under disability, her continued entitlement to benefits is periodically reviewed. 20 C.F.R. § 404.1594(a). A claimant who experiences

medical improvement related to her ability to engage in work may lose her eligibility to receive benefits if there is an improvement in the claimant's condition:

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by—
>
> (1) substantial evidence which demonstrates that—
>
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B) the individual is now able to engage in substantial gainful activity[.]

42 U.S.C. § 423(f). To determine if a claimant continues to be under disability, the regulations prescribe an eight-step sequential inquiry. *See* 20 C.F.R. § 404.1594(f).

The evaluation process is intended to determine the following: (1) whether claimant is engaging in substantial gainful activity; (2) if not gainfully employed, whether the claimant has an impairment or combination of impairments which meets or equals a listing; (3) if impairments do not meet a listing, whether there has been medical improvement; (4) if there has been medical improvement, whether the improvement is related to the claimant's ability to do work; (5) if there is improvement related to claimant's ability to do work, whether an exception to medical improvement applies; (6) if medical improvement is related to the claimant's ability to do work or if one of the first groups of exceptions to medical improvement applies, whether the claimant has a severe impairment; (7) if the claimant has a severe impairment, whether the claimant has the

3

RFC to perform past relevant work; and (8) if the claimant cannot perform past relevant work, whether the claimant can perform other work.

Here, because Plaintiff did not provide requested medical evidence during the continuing review process, the determination that she was no longer disabled did not require a determination whether she had medically improved or could engage in substantial gainful activity. (R. 185.) *See* 20 C.F.R. § 404.1494(e)(2). However, after receiving the notice that she would no longer receive benefits, Plaintiff requested reconsideration of the cessation of disability benefits. The Defendant granted Plaintiff a hearing and received additional evidence from Plaintiff related to back pain, narcolepsy, and mild neurocognitive disorder. The disability hearing officer determined, using the eight-step evaluation process, that Plaintiff was no longer disabled. (R. 207–14.)

Plaintiff appealed the determination, requesting a hearing before an ALJ. A hearing was conducted on July 5, 2017, and the ALJ's resulting Decision applied the eight steps. Relevant findings include the ALJ's determination that Plaintiff's current severe impairments were narcolepsy, minimal lumbar spondylosis at L3-L4 and L4-L5, obesity, status post gastric sleeve procedure, and mild neurocognitive disorder. (R. 12.) The ALJ also found that Plaintiff "has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed." (R. 13.) The ALJ considered listings 1.04 (Disorders of the spine), 11.00 (Neurological) and 12.02 (Neurocognitive disorders).

The ALJ determined that Plaintiff's medical improvement occurred on August 4, 2015, as there had been a decrease in the medical severity of the impairment that was

present at the CPD. Medical improvement is defined as any decrease in medical severity of the impairment or impairments, as established by improvement in symptoms, signs, or laboratory findings. 20 C.F.R. § 404.1594(b)(1). The ALJ determined that, since August 4, 2015, Plaintiff's narcolepsy had decreased in medical severity to the point where Plaintiff had the RFC to perform all exertional levels as defined in 20 C.F.R. § 404.1567(b), with some exception. She could only occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, and could not work in proximity to hazards, such as open and moving machinery, unprotected heights, open flames and large bodies of water. Additionally, Plaintiff would be off task up to 15% of the workday. In making this RFC, the ALJ did not consider the limiting effects of the impairments that developed after the CPD.

The ALJ also determined that Plaintiff's medical improvement was related to the ability to work, *see* 20 C.F.R. § 404.1594(c)(3)(ii), because it resulted in an increase in Plaintiff's RFC, *see* 20 C.F.R. § 404.1594(b)(3) (stating that medical improvement is not related to the ability to work unless it results in an increase in the claimant's functional capacity to perform basic work activities). Next, the ALJ determined that Plaintiff continued to have a severe impairment or combination of impairments and determined Plaintiff's RFC based on all Plaintiff's medically determinable impairments. The resulting RFC was that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(c), except that she had the same restrictions from the prior decision related to climbing and working around hazards. Additionally, she would be off task up to 15% of the workday, but could understand, remember, and carry out simple instructions and tasks, could

5

make judgments on simple work decisions, and would respond appropriately to coworkers, supervisors and the general public. Plaintiff could also deal with routine changes in a routine work setting. (R. 15.)

Plaintiff did not have past relevant work. However, in consideration of the above RFC and Plaintiff's age, education, and work experience, the ALJ found, based on hypothetical questions to the vocational expert (VE), that Plaintiff could perform work that existed in significant numbers in the national economy. These included office helper, sales attendant, and rental consultant. Accordingly, Plaintiff was no longer disabled within the meaning of the Social Security Act as of August 4, 2015.

**B.      Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**C.    Legal Analysis**

Plaintiff, who is proceeding without counsel, makes several arguments on appeal. The Court begins by clarifying that the only decision that is reviewable is the ALJ's February 9, 2018, Decision. Accordingly, Plaintiff's arguments pertaining to the initial cessation of benefits, or to the disability hearing officer's decision on appeal, are not considered. However, the Court has liberally construed Plaintiff's submissions, and notes that the essence of her arguments is that her medical condition has not improved, and neither have her functional limitations. She submits that the ALJ and the VE did not consider the combined effects of her impairments. According to Plaintiff, not only is her

7

narcolepsy unimproved but, the combination of impairments causes a greater degree of limitations than when she was originally deemed disabled.

Plaintiff takes issue with the ALJ's statement that, in making the RFC assessment, she did not consider the limiting effects of the impairments that developed after the CPD. (R. 14.) However, because the ALJ made that statement in connection with steps three and four, it was an appropriate limitation under the governing regulations. "Medical improvement is any decrease in the medical severity of your impairment(s) *which was present at the time* of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1) (emphasis added); *see also* 20 C.F.R. § 404.1594(b)(7) (For purposes of determining whether medical improvement has occurred, we will compare the current medical severity of that impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled to the medical severity of that impairment(s) at that time.). Thus, it was appropriate for the ALJ to consider only the limiting effects of the impairment that was present at the time of the CPD.

That is not to say, however, that the ALJ's finding of medical improvement is supported by substantial evidence. "Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.* § 404.1594(c)(1). In assessing Plaintiff's potential improvement, the ALJ pointed to 2014 reports from neurologist A. Kahn, M.D., who had been treating

Plaintiff for narcolepsy since 2007. The ALJ also discussed notes from Plaintiff's primary care provider in 2014 and 2015. The ALJ reasoned:

> The medical evidence from 2014 and up to the cessation of disability shows that the claimant's narcolepsy has been controlled with medication (e.g. B3F). Notes from claimant's primary care provider from 2014 and 2015 do not mention any narcolepsy symptoms (B1F; B15F). In October 2014, claimant advised her neurologist that she was doing okay, was without side effects and had no new concerns (B3F/5). Neurological examination was unremarkable and the claimant's medication was not changed (B3F/5).

(R. 14.)

The Court finds that the ALJ has not built an accurate and logical bridge between the evidence and her conclusion. The ALJ does not specifically address the signs and symptoms that improved, or make a comparison to those that existed previously, at the time of the CPD. In 2014, Plaintiff saw Dr. Kahn for: "Chief Complaint: Recheck narcolepsy. Doing okay. Yearly med check." (R. 418.) Plaintiff noted no side-affects and "no new concerns." (R. 420.)

The ALJ does not explain how a notation of "doing okay" is intended to indicate an absence of symptoms, or an improvement in symptoms. During the CPD, Dr. Kahn had made a similar notation, that Plaintiff was doing well, yet the ALJ determined that this did not mean Plaintiff was symptom free or was without disabling symptoms and limitations of function. Rather, the statement indicated an improvement (although minimal) over prior symptoms. (R. 174.) This Court concludes that—absent further explanation and comparison to previous records—"doing okay" is not an upgrade from "doing well." Defendant argues to this Court that doing okay should be "considered in the context of Plaintiff's RFC having improved significantly." (Def.'s Mem. 7.) That

argument takes a backwards view of the process. Medically determinable impairments, to the degree they are accompanied by functional limitations, determine a claimant's RFC. *See* 20 C.F.R. § 404.1594.

Plaintiff's indication that she had no "new concerns" is not a medical finding about whether her symptoms had lessened. Ongoing symptoms of narcolepsy would not be a new concern, as she had been diagnosed with the condition years earlier. Finally, as the ALJ noted in her Decision, Plaintiff's medication was not changed. The medications were described at the time of the CPD as being "at very high doses." (R. 174.) Yet, disabling symptoms remained. The ALJ's observation, that medications remained unchanged, is not a comparison of signs, symptoms, or laboratory findings that supports a conclusion that Plaintiff experienced medical improvement under the Social Security Act.

The ALJ also noted that records from Plaintiff's primary care provider did not mention narcolepsy symptoms. Rather than viewing this as substantial evidence of medical improvement, the Court finds that the records are of *no* value as a comparison of the signs and symptoms of Plaintiff's narcolepsy. Additionally, the notes for each visit state: "The following portions of the patient's history were reviewed and updated as appropriate: allergies, current medication, past family history, past medical history, past social history, past surgical history and problem list." (*See, e.g.*, R. 384.) However, the substance of those updates is not provided.

Although the ALJ also references a July 2015 psychological consultative exam, as well as July 2015 medical consultative exam, any comparison to signs and symptoms

from 2007 are nevertheless lacking. The ALJ's Decision contains no discussion of the medical reports at the time of the CPD.

Because substantial evidence does not support the ALJ's conclusion that Plaintiff's medical condition improved by August 4, 2015, remand is appropriate to permit Defendant to conduct a proper analysis of whether there was medical improvement.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Decision and REMANDS for further proceedings.

SO ORDERED on March 9, 2020.

                          s/ *Holly A. Brady*
                          JUDGE HOLLY A. BRADY
                          UNITED STATES DISTRICT COURT